IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TIMOTHY J. STURDY                                                               PLAINTIFF

V.                         NO. 10-5128

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Timothy J. Sturdy, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on November 28, 2006, alleging an inability to work since January 3, 2005, due to back problems. (Tr. 112-113, 117). An administrative hearing was held on September 4, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 25-46).

-1-

By written decision dated September 28, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 13). Specifically, the ALJ found Plaintiff had the following severe impairments: compression fracture at T-12 and low back pain. (Tr. 13). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work, except that he must avoid concentrated exposure to vibrations and hazards, such as moving machinery and heights. (Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff could perform other work as an electrical assembler, small parts assembler, and collator operator. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 27, 2010. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 12, 15).

**II.   Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, Plaintiff was seen by Dr. Ashish Mathur, a physician at Community Physicians Group - Gentry Medical Center, a total of thirty-one times, and Dr. John Caswell, of the same clinic, one time, in 2008 and 2009. (Tr. 388-389, 391-395, 397-400, 401, 403-416, 426-445, 447-450, 453-457, 449-468, 470-472, 534-541, 544, 546, 548-549). However, the ALJ gave Dr. Mathur's opinion "little weight," stating that "the doctor apparently relied quite heavily

-4-

on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported (Exhibit 12F)." (Tr. 18). The ALJ further stated that the course of treatment pursued by Dr. Mathur had not been consistent with what one would expect if Plaintiff were truly disabled, as the doctor reported. (Tr. 18). On the other hand, the ALJ gave great weight to the opinions of the "consultative examiners and medical consultants of the State Disability Determination Services (DDS)," and concluded that the medical evidence and opinions were consistent with the ALJ's RFC. (Tr. 18).

"A treating source's opinion is to be given controlling weight where it is supported by acceptable clinical and laboratory diagnostic techniques and where it is not inconsistent with other substantial evidence in the record." Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003), paraphrasing 20 C.F.R. § 404.1527(d)(2).

The majority of visits to Dr. Mathur related to Plaintiff's lower back pain and medication refills. On April 7, 2008, Dr. Mathur noted, based upon a physical examination, that Plaintiff's thoracic mobility and lumbar mobility were decreased . (Tr. 414). There was no kyphosis or scoliosis, and the spine was positive for posterior tenderness. Plaintiff's straight leg raise was "positive: 15 degrees of right foot." Dr. Mathur noted that Plaintiff was on Dilaudid, 8 mg., every six hours, which seemed to help. (Tr. 414). Plaintiff saw Dr. Mathur on April 29, 2008 and May 5, 2008, for his lower and middle back pain, and for pain management. (Tr. 411-413, 467-469). On May 5, 2008, Plaintiff reported he was doing much better on the new regimen of pain management, and that he felt better. (Tr. 411). However, on June 2, 2008, Plaintiff complained to Dr. Mathur that his hypertension and pain were worsening. (Tr. 409). On June 27, 2008, Dr. Mathur reported that Plaintiff's hypertension was benign and under fair control,

but that he still had chronic low back pain. (Tr. 408).

On July 21, 2008, Plaintiff reported to Dr. Caswell that he fell off of a porch the previous Thursday, and had been in bed since then. (Tr. 405). At that time, Plaintiff was taking one to two Dilaudid up to five times per day for pain. (Tr. 405). On July 29, 2008, Plaintiff was admitted to the emergency room of Northwest Medical Center - Springdale, vomiting blood. (Tr. 350). Plaintiff reported that he had been out of pain medicines for the previous two to three days with vomiting since then, and complained of low back pain. A thoracic spine x-ray revealed volume loss at T12, which was old, and there was some scattered degenerative change, but an acute finding was not appreciated. (Tr. 364, 480).

On August 12, 2008, Plaintiff again presented to Dr. Mathur with back pain, hyptertension and anxiety. (Tr. 403). On September 8, 2008, Plaintiff reported to Dr. Mathur that his medications for back pain were helping, but not as much as before. (Tr. 401). He also reported he was not eating. On October 1, 2008, Plaintiff reported to Dr. Mathur that he had back and stomach pain, and had not been able to eat in three days, and had been losing weight. (Tr. 399). From October 9 to October 12, 2008, Plaintiff was in the hospital at Northwest Medical Center - Washington County. He was assessed with pneumonia, COPD (chronic obstructive pulmonary disease), and "acute renal failure, multifactorial, prerenal in etiology, versus angiotensin receptor blocker induced, versus diuretic induced or nonsteroidal antiinflammatory drugs." (Tr. 319). Dr. Shamsul Alam, who specializes in internal medicine and nephrology, was consulted while Plaintiff was at the hospital, and Dr. Alam assessed Plaintiff with:

1. Acute renal failure secondary to multiple factors including urinary tract obstruction,

AO72A
(Rev. 8/82)

      chronic NSAID use and acute hypotension from pneumonia;
2. History of hypertension;
3. Chronic back pain, taking large amount of NSAIDS for a long time;
4. Pneumonia;
5. Metabolic pseudocyst with elevated anion gap on presentation. However it has improved since he came to the medical floor;
6. Nicotine dependence;
7. History of chronic pain medication use.

(Tr. 323). On October 12, 2008, Plaintiff was discharged from the hospital and advised to quit smoking. (Tr. 316).[1]

On October 13, 2008, Plaintiff presented himself to Dr. Mathur, to follow-up from his three day hospital stay. Dr. Mathur reported Plaintiff was feeling better, but noted that Plaintiff had low back pain tenderness to palpation. (Tr. 398). Plaintiff thereafter presented himself to Dr. Mathur sixteen times between November 3, 2008 and July 29, 2009, continuously complaining of his chronic back pain. On August 4, 2009, Dr. Mathur prepared a Medical Source Statement-Physical. (Tr. 530-531, 550-551). In the statement, Dr. Mathur opined:

> Plaintiff is limited, but retains maximum capacities to: occasionally lift and/or carry less than 10 lbs.; stand and/or walk a total of 1 hour and continuously for 10 minutes; sit a total of 1 hour, and continuously for 10 minutes; push and/or pull (including hand/or foot controls); limited - cannot push or pull anything requiring more than 5 lbs of force.
>     P can never climb, stoop, crouch, or bend.
>     P can occasionally balance and kneel.
>     P is limited in his reaching and handling
>     P is unlimited in his fingering, feeling, seeing, hearing, and speaking.
>     P is limited - any vibration can increase pain and limit function.
>     Operation of machinery is not recommended with current meds.
>     1. MRI lower spine - spondylosis.
>     2. Decreased ROM due to pain of the back + strait leg raises
>     3. Significant increase pain in lower back with minimal movement.
> Assessment is for time period 3/08 to 7/09.

---

[1] A record dated October 9, 2008 from Northwest Medical Center-Washington County, indicated that Plaintiff smoked 1/1/2 to 2 packs of cigarettes per day. (Tr. 318).

AO72A (Rev. 8/82)

(Tr. 530-531, 550-551). Plaintiff then saw Dr. Mathur six times after Dr. Mathur prepared the Medical Source Statement.

The only Physical RFC Assessment in the record is one that was completed by non-examining medical consultant, "C. Ziehmer" on June 4, 2007.[2]   (Tr. 225-230). In the assessment, C. Ziehmer found that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 20 pounds, frequently lift and/or carry (including upward pulling) 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; push and/or pull (including operation of hand/foot controls) unlimited, other than shown for lift and/or carry.

(Tr. 226). C. Ziehmer further found that Plaintiff had no postural, manipulative or visual limitations, but that Plaintiff should avoid concentrated exposure to vibration and hazards (machinery, heights, etc.). (Tr. 227-228). C. Ziehmer acknowledged that Plaintiff did have x-ray findings of compression of T12, but had no significant neurological findings or limits, and that he had been given a release to light work from his treating doctor. C. Ziehmer concluded that Plaintiff did have an impairment that could be expected to result in some pain and limitations as noted in the RFC, and his allegations were found to be partially credible. (Tr. 229).

Plaintiff was also examined, at the request of the Commissioner, by Dr. Saad M. Al-Shathir, on April 23, 2007. Dr. Shathir found that Plaintiff's strength was 5/5. However, Dr. Shathir stated that Plaintiff has "give-away phenomena on almost all the tests in the muscles in both upper and lower limbs." He found Plaintiff's deep tendon reflexes to be 2/4, and sensation 5/5. He reported that Plaintiff's coordination and muscle tone were normal, and that as to the

---

[2]The record does not reflect whether C. Ziehmer is a physician. The ALJ simply refers to C. Ziehmeer as a "medical consultant."

straight leg raising test, when he was supine, he could not move the left lower limb to any degree, causing severe pain in his lower back. Plaintiff could move the right lower limb, and do straight leg raising actively and passively with pain mostly in the hamstring and lower back. Dr. Shathir reported that when Plaintiff was seated, he had pain from tightness in his hamstrings at 80 degrees. Dr. Shathir found Plaintiff's gait was normal in speed and stability without an assistive device, and there was no deformity or scoliosis. Plaintiff was tender to light touch in his dorsal, lumbar, and sacral area, and Dr. Shathir found him to have "poor effort with range of motion of his back, his neck, and his upper limbs." (Tr. 203). He further found Plaintiff had good use of the upper limbs, he could sit up, lie down, transfer, stand up, walk, cross his legs, reach above his head, and manipulate objects in his hands. (Tr. 203).

The Court does not believe there is substantial evidence to support the ALJ's decision to give Plaintiff's treating physician, Dr. Mathur, "little weight," and to give greater weight to a non-examining medical consultant and a physician who examined Plaintiff only once. As stated earlier, Plaintiff saw Dr. Mathur thirty-one times in 2008 and 2009, and the Court does not believe the ALJ gave sufficient explanation as to why he did not give Dr. Mathur's opinion controlling weight. Therefore, the Court finds it necessary to remand this matter to the ALJ in order for him to re-evaluate Plaintiff's RFC, and to explain in greater detail the reasons he failed to give Dr. Mathur's opinion controlling weight.

**IV.   Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of

42 U.S.C. § 405(g).

DATED this 22nd day of July, 2011.

/s/ *Erin L. Setser*
  HON. ERIN L. SETSER
  UNITED STATES MAGISTRATE JUDGE